NEHEMIAH O. PILLSBURY, assignee, appellant,

*v.*

JAMES KINGON and others, respondents.

1. An assignee, under an assignment for the benefit of the creditors of the assignor, pursuant to the act entitled "An act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors" (*Rev. 36*), may file a bill to set aside a prior conveyance of lands made by the assignor for the purpose of defrauding his creditors, if the property so conveyed is required for the payment of the claims of creditors, and creditors who were intended to be hindered, delayed and defrauded by such conveyance have presented their claims to the assignee for allowance.

2. Assignees, under the assignment act, and executors and administrators of insolvent estates, are the representatives of creditors, and, as such, may, for the benefit of creditors, set aside conveyances by the assignor or the decedent, in fraud of creditors, to the extent that such property is needed for the payment of debts.

3. *Garretson* v. *Brown, 2 Dutch. 425*, approved; *Van Keuren* v. *McLaughlin, 6 C. E. Gr. 163*, overruled.

On appeal from a decree of the vice-chancellor, reported in *Pillsbury* v. *Kingon, 4 Stew. Eq. 619.*

*Mr. Frederick Adams*, for appellant, cited—

*Englehart* v. *Blanjot, 2 Whart. 240, 244; Buehler* v. *Gloninger, 2 Watts 226; Thompson* v. *Dougherty, 12 Serg. & Rawle 448; Moore* v. *Bonnell, 2 Vr. 94, 95; Vandoren* v. *Todd, 2 Gr. Ch. 397; Knight* v. *Packer, 1 Beas. 217; Scull* v. *Reeves, 2 Gr. Ch. 131; State, Clark, pros., v. Groper, 8 Vr. 174, 176; Alpaugh* v. *Roberson, 12 C. E. Gr. 96; Stewart* v. *Kearney, 6 Watts 455; Pringle* v. *Pringle, 59 Pa. St. 281; In re Estate of Koch, 4 Rawle 268; Miller* v. *Mackenzie, 2 Stew. Eq. 295; State, New Jersey R. R. and Trans. Co., pros., v. Hancock, 6 Vr. 537; Hackettstown* ads. *Swackhamer, 8 Vr. 192; Garretson* v. *Brown, 2 Dutch, 425; Newkirk* v. *Morris, 1 Beas. 62, 65;*

Pillsbury v. Kingon.

*Wilson v. Brown, 1 Beas. 246 ; Matlack v. James, 2 Beas. 126 ; Van Keuren v. McLaughlin, 6 C. E. Gr. 163, 168 ; Bayard v. Hoffman, 4 Johns. Ch. 450 ; Swift v. Thompson, 9 Conn. 69 ; Sixth Ward Building Association v. Wilson, 41 Md. 506 ; Nichols v. Kribs, 10 Wis. 76 ; Hays v. Doane, 3 Stock. 84, 88 ; Melville v. Mount, 1 Harr. 363 ; Hunt v. Field, 1 Stock. 36 ; Curry v. Glass, 10 C. E. Gr. 108 ; Haston v. Castner, 2 Stew. Eq. 536 ; Shurts v. Howell, 3 Stew. Eq. 420 ; Atwell v. Reese River Mining Co., L. R., (7 Eq.) 346 ; Philhower v. Todd, 3 Stock. 312, 315 ; Tucker v. Moreland, 10 Pet. 64 ; Eaton v. Eaton, 8 Vr. 108 ; Annin v. Annin, 9 C. E. Gr. 184 ; Crawford v. Bertholf, Sax. 460 ; Phillipsburg Bank v. Fulmer, 2 Vr. 52 ; Campbell v. Nichols, 4 Vr. 82 ; Dewees v. Manhattan Ins. Co., 6 Vr. 366.*

*Mr. J. H. Ackerman,* for respondent

The opinion of the court was delivered by

Depue, J.

The complainant is the assignee of John C. Doremus and William L. Doremus. The bill charges that on the 14th of January, 1878, the said John C. Doremus and William L. Doremus, who were partners, executed and delivered to the complain-

---

Note.—The following additional cases hold that an assignee for the benefit of creditors may set aside fraudulent conveyances made by his assignor before the assignment—in some states, however, the power is statutory : *Kilbourne v. Fay, 29 Ohio St. 264 ; Hallowell v. Baylies, 10 Ohio St. 537 ; Gibbs v. Thayer, 6 Cush. 30 ; Blake v. Sawin, 10 Allen 340 ; Freeland v. Freeland, 102 Mass. 475 ; Lynde v. McGregor, 13 Allen 172 ; Waters v. Dashiell, 1 Md. 455 ; Simpson v. Warren, 55 Me. 18 ; Shipman v. Ætna Ins. Co., 29 Conn. 245 ; Shibley v. Long, 6 Rand. 735 ; Clough v. Thompson, 7 Gratt. 26 ; Staton v. Pittman, 11 Gratt. 99 ; Doyle v. Peckham, 9 R. I. 21 ; Southard v. Benner, 72 N. Y. 424 ; McMahon v. Allen, 35 N. Y. 403 ; Moncure v. Hanson, 15 Pa. St. 385 ; Tams v. Bullitt, 35 Pa. St. 308 ; 22 Alb. L. J. 60, 81.*

The following cases deny such right: *Sere v. Pitot, 6 Cranch 332 ; Estabrook v. Messersmith, 18 Wis. 572 ; Browning v. Hart, 6 Barb. 91 ; Leach v. Kelsey, 7 Barb. 466 ; Maiders v. Culvers, 1 Duv. 164 ; Carr v. Gale, 3 Woodb. &. M. 68 ; Flower v. Cornish, 25 Minn. 473.*

Pillsbury v. Kingon.

ant an assignment of all their partnership and individual prop-
erty, for the purpose of securing to the creditors of the firm and
the individual creditors of the assignors an equal distribution
of the partnership and separate property of the assignors, in ac-
cordance with the provisions of the act entitled "An act to secure
to creditors an equal and just division of the estates of debtors
who convey to assignees for the benefit of creditors." *Rev. 36.*
It further charges that the firm property embraced in the inven-
tory does not exceed in value the sum of $895.44, of which more
than $700 are book accounts, a portion of which is probably un-
collectible; that the individual estate of William L. Doremus is
estimated at the sum of $654.10, and the individual estate of
John C. Doremus at the sum of $1,200; that firm debts amount-
ing to $4,345.51, and individual debts of William L. Doremus
amounting to $204.33, had been presented to the complainant,
and that the estate in the complainant's hands and mentioned in
the inventory is insufficient to pay in full the debts of the firm
presented to the complainant.

The bill further charges that the said John C. Doremus, on
the 16th of December, 1877, was seized of two tracts of land
situate in the township of Montclair, valued at $7,000 above en-
cumbrances, and that on that day he conveyed the said lands to
his daughter, Jane A. Kingon, for a pretended consideration;
that at the time of the said conveyance the said firm was hope-

---

Such assignee may set aside a mortgage or other conveyance void as to cred-
itors, for want of registration or other defects. *Rood* v. *Welch, 23 Conn. 157;
Hanes* v. *Tiffany, 25 Ohio St. 549; Leland's Case, 10 Blatch. 503; Barker* v.
*Smith, 12 Bank. Reg. 474;* but see *Williams* v. *Winsor, 12 R. I. 9; Lockwood* v.
*Slevin, 26 Ind. 124; Dorsey* v. *Smithson, 6 Harr. & Johns. 61; Van Heusen* v.
*Radcliff, 17 N. Y. 580.*

In some states, the assignee may affirm such fraudulent conveyance, and
thereby estop creditors from impeaching it. *Butler* v. *Hildreth, 5 Metc. 49;
Freeland* v. *Freeland, 102 Mass. 477;* but see *Leiman's Case, 32 Md. 225;
Dugan* v. *Vattier, 3 Blackf. 245.*

If the creditors bring suit to impeach the assignor's deed, the assignee is a
necessary party. *Jamison* v. *Chesnut, 8 Md. 34; Swan* v. *Dent, 2 Md. Ch. 111.*

A receiver cannot recover dividends fraudulently declared and paid by an
insolvent corporation. *Butterworth* v. *O'Brien, 39 Barb. 192;* see *Lexington
Ins. Co.* v. *Page, 17 B. Mon. 412.*

Pillsbury v. Kingon.

lessly insolvent, being indebted in the sum of $12,000, whereof the debts presented to the complainant were parcel; that the said conveyance was contrived and intended in fraud of creditors, and that the ·grantee took the said conveyance with knowledge of the insolvency of the grantor, and of the fraudulent purpose with which the conveyance was made.

The prayer in the bill is that the said fraudulent conveyance may be set aside, and that it may be decreed that the premises so fraudulently conveyed away were the property of the said John C. Doremus at the time of the execution of the said deed of assignment, and became equitably vested in the complainant under the deed of assignment.    To this bill a demurrer was filed.

Concisely stated, the case is this: A conveyance of property by an insolvent debtor, in fraud of his creditors; a subsequent assign-' ment by the debtor for the benefit of creditors, pursuant to the assignment act, under which creditors who were hindered, delayed and defrauded by the conveyance, have presented their claims for allowance, and the property in the hands of the assignee insufficient to pay the claims of creditors in full, without resorting to the property previously conveyed away by the debtor.    The question on the demurrer is whether, under such circumstances, the assignee has a standing in court to set aside the fraudulent conveyance, and reach the property conveyed away by the debtor

The proceedings for the collection of claims against the estates of decedents are similar to those against the estates of voluntary assignors (*Gifford* v. *Black, 22 Ind. 444*), and hence it has been said that an assignment by a decedent void as to his creditors, leaves or vests the property assigned, as assets, in the hands of his executor or administrator (*3 Wms. on Exrs. 1679;* and cases are there cited from Mass., S. C., Tenn., N. H., N. Y., Mich., La., Mo., Vt., Pa., Tex., Me. and Conn.); but such right, in some of the states mentioned, is statutory, and in other states is denied. *Dorsey* v. *Smithson, 6 Harr. & Johns. 61; Snodgrass* v. *Andrews, 30 Miss. 472; McLaughlin* v. *McLaughlin, 16 Mo. 242; Brown* v. *Finley, 18 Mo. 375; Merry* v. *Freemon, 44 Mo. 518; Coltraine* v. *Causey, 3 Ired. Eq. 246; Ordronaux* v. *Helie, 3 Sandf. Ch. 512; Benjamin* v. *Le Baron, 15 Ohio 517; Com.* v. *Richardson, 8 B. Mon. 93; Crosby* v. *De Graffenreid, 19 Ga. 290; Beale* v. *Hall, 22 Ga. 431; Choteau* v. *Jones, 11 Ill. 300; Beebe* v. *Saulter, 87 Ill. 518; King* v. *Clarke, 2 Hill's Ch. 611; Winn* v. *Barnett, 31 Miss. 653; Sharp* v. *Caldwell, 7 Humph. 415; Lassiter* v. *Cole, 8 Humph. 621; Martin* v. *Martin, 1 Vt. 91; Peaslee* v. *Barney, 1 D. Chip. 331; Bank of U. S.* v. *Burke, 4 Blackf. 141; Hills* v. *Sherwood, 48 Cal. 386; George*

in fraud of creditors, for the purpose of applying it in satisfaction of the claims of creditors.

No rule of law is better settled than that a conveyance in fraud of creditors is good as between the parties to it. The statute of *13 Eliz. c. 5,* which makes void grants and conveyances contrived in fraud, with intent to hinder, delay or defraud creditors, is in express terms limited to those persons whose actions, debts, damages or demands are or may be hindered or defeated by such covinous or fraudulent devices and practices. *Rev. 447 § 12.* It is equally clear that such conveyances are also unassailable by those who hold a derivative title from the fraudulent grantor, and, in virtue of their title, become simply representatives of his interests. An heir or devisee of the fraudulent grantor is exclusively the representative of the latter, and succeeds only to his rights. In no sense can the heir or devisee be considered as representing those whose interests are intended to be defrauded; and on the plain construction of the statute he is disabled from taking advantage of its provisions. The executor or administrator of a solvent estate stands in the same position. As such, he is also the representative of the fraudulent grantor, and has no power to recall a fraudulent grant of chattels for the benefit of the grantor's estate. The same disability will rest upon an assignee, who, in virtue of the instrument of transfer, becomes merely the representative of his grantor, and succeeds only to the rights of the latter.

The material question for present consideration is, whether those who hold by a title derived from the grantor, but who, in virtue of that title, become the representatives of the creditors of

v. *Williamson, 26 Mo. 190; Cobb v. Norwood, 11 Tex. 556; Hunt v. Butterworth, 21 Tex. 183; Hammett v. Harrison, 1 Phila. 349*); even where the representative alleges that he is also a defrauded creditor (*Moody v. Fry, 3 Humph. 567; Coltraine v. Causey, 3 Ired. Eq. 246*); see further *Bate v. Graham, 11 N. Y. 237; Smith v. Pollard, 4 B. Mon. 66; Cooley v. Brown, 30 Iowa 470; Badger v. Story, 16 N. H. 168.*

But if the fraudulent grantee has been appointed executor or administrator, equity may grant relief against him. *Hampson v. Sumner, 18 Ohio 444; Clayton v. Tucker, 20 Ga. 452; Doolittle v. Bridgeman, 1 Greene (Iowa) 265; Shears v. Rogers, 3 Barn. & Ad. 362.—*Rep

the grantor, as a class—as, for instance, the executors or administrators of an insolvent estate, or an assignee for the benefit of the grantor's creditors—may not be allowed, in the interest of creditors, to have a standing in court, to avoid the fraudulent grants and conveyances of the debtor for the benefit of his creditors.

The leading case on this subject is *Hawes* v. *Leader, Cro. Jac. 270*. In that case the defendant was the administrator of one Thomas Cookson. The plaintiff averred, in his declaration, that the said Cookson, for £20 paid by the plaintiff, granted all his goods mentioned in a schedule, and covenanted that he, his administrators &c., should safely keep and quietly deliver them to the plaintiff on demand, and bound himself in £40 for the performance of that covenant. Cookson died, and the plaintiff demanded the goods of the defendant, who had become administrator, and being refused, brought his action. The defendant pleaded the statute of *13 Eliz. c. 5*, and further said that the intestate, at the time of the grant, was indebted to divers persons in several sums (naming both the persons and the sums), and that the deed of gift was made of fraud and covin betwixt Cookson and the plaintiff to deceive his creditors named; that Cookson used and occupied all the goods during his life, and that administration, after his death, was committed to the defendant. The plaintiff demurred, and assigned as grounds of demurrer, (1) that it was not averred that the debts due were unpaid to the creditors named; (2) that the plea did not show that the said debts were due by specialty, for an administrator was not liable to debts if they be not upon specialty; (3) that the goods were liable to the creditors in the plaintiff's hands, as an executor *de son tort*, if the deed of gift be fraudulent; (4) that creditors might never sue for their debts, and then the defendant might thereby justify the detainer of the goods forever, and (5) that the defendant was not such a person as is enabled by the statute to plead that plea, for the statute makes the deed void as against creditors, but not against the party himself, his executor or administrator. On the argument of the demurrer it was adjudged for the plaintiff.

Pillsbury *v.* Kingon.

It will be perceived that, in the case cited, the action was at law, and the pleading being entirely wanting in the averments necessary to put the interests of creditors in the issue, the decision in principle went no further than holding that an administrator, as such, cannot take advantage of the statute where the rights of creditors do not appear to be involved.   Certain it is that, by a long line of decisions, it has become settled law that a conveyance of chattels made by a debtor in fraud of his creditors, is void, and the property conveyed is assets for the payment of debts.   *3 Wms. on Exrs. 1679.*   At common law, creditors might consider the fraudulent donee as an executor *de son tort,* if he took the goods into his possession after the death of the donor. But it was not considered that the rights of creditors depended altogether on that mode of proceeding; for it was adjudged in *Bethel* v. *Stanhope, Cro. Eliz. 810,* that if the gift of goods be in itself fraudulent, and the covin is expressly found by the jury, then it is utterly void against the creditors by the *13 Eliz. c. 5,* and the intestate died possessed of them; and when the donee took them it was a trespass against the administrator for which he hath his remedy, and they were always assets in his hands. Where A, being indebted to B, made C his executor, and died, and C, the executor, promised B, on good consideration, that if he could discover any goods, parcel of the testator's estate at the time of his death, he should have his debts satisfied thereout, and the question was whether a lease for years, conveyed to a stranger by the testator in his lifetime, fraudulently, should, in law, be parcel of his estate at the time of his death or not, it was, by the whole court, resolved to be parcel of the testator's estate at the time of his death, for the lease was void against creditors. *Anon., 2 Roll. 173.*   Mr. Roberts, in his treatise on Fraudulent Conveyances, says:

" Wherever a man makes a fraudulent gift of his goods and chattels, and dies indebted, the rule, upon the statute of *Eliz. c. 5,* has always been to construe the gift as utterly void against all his creditors, and the debtor to have died in full possession with respect to their claims, so that the effects are just as much assets in the hands of the personal representatives, as to creditors, as if no such attempt to alien them had been made." *Roberts on Fraud. Con. 592.*

In *Shears* v. *Rogers, 3 B. & Ad. 362*, the defendant was the person to whom the lease had been assigned by the testator in his lifetime, in fraud of his creditors, and who afterwards became his executor; but none of the judges mentioned the fact that the defendant might have been held liable as executor *de son tort*, except Pattison, J.; and Lord Tenterden, C. J., puts his decision on the ground that " the authorities show that whenever a man makes a gift of goods which is fraudulent and void as against creditors, and dies, he is considered to have died in full possession, with respect to the claims of creditors, and the goods are assets in the hands of his executor."

In *Shears* v. *Rogers* and *Bethel* v. *Stanhope*, the question arose under pleas of *plene administravit*. The issue on these pleas admitted that the goods and chattels fraudulently conveyed by the deceased were needed to pay debts. In this respect those cases are distinguishable from *Hawes* v. *Leader*. In *Shears* v. *Rogers*, the lease had been assigned by the testator to the defendant, in trust for the benefit of the testator during his life, and after his death for the benefit of one of the testator's daughters-in-law. The defendant, after probate of the will, and before he had notice of the plaintiff's debt, delivered the deed of assignment to the husband of the daughter-in-law. He did not deliver the key of the leasehold premises, but the premises were let by the husband to a tenant. In *Bethel* v. *Stanhope*, the testator made a gift of his goods to his daughter by covin, to defraud his creditors, and died. The defendant intermeddled with the goods, and afterwards the daughter, by this gift, took possession of the goods, and after that the administration was committed to the defendant as executor. These cases affirm the power of the executor, acting in behalf of creditors, under some circumstances, to avoid conveyances by a testator in fraud of his creditors. In both cases the goods so conveyed away were held to be assets in the hands of the executor—a result which is not supposable if the executor had no power to retain or recover them, in avoidance of the conveyance of the testator, by setting up the fact that they were granted away by the testator in fraud of his creditors.

At common law, there could be no executor *de son tort* where there was a rightful executor or administrator, and it was only to give substantial effect to the statute of Elizabeth that a voluntary donee of chattels was considered chargeable as an executor *de son tort*, if he took possession of them after the death of the donor. *Roberts on Fraud. Con. 593.* Such a representative of a deceased where there is a rightful executor or administrator, is utterly out of place in our system of administration upon an insolvent estate and the distribution of its assets among creditors. In such a condition of the estate of a decedent, the rightful executor or administrator is generally the representative in fact of creditors, and of creditors only, and alone has the capacity to take the steps necessary under the statute to effectuate an equal distribution, among the creditors of an insolvent estate, of the assets which may be made available for the payment of debts. If creditors should sue the fraudulent donee, as executor *de son tort*, or should, by virtue of an execution on a judgment against the rightful executor or administrator, levy on the chattels so granted away, priorities would be obtained contrary to the policy of the statute for the distribution of the assets among the creditors. In *Holland* v. *Cruft, 20 Pick. 321, 328*, the right of the administrator of an insolvent estate to set aside a conveyance made by the intestate in fraud of creditors, was deduced from the fact that, in such a condition of the estate, the administrator is the trustee and representative of creditors, and, as such, may stand upon their rights, and assert claims which the intestate himself could not have asserted; and that deduction was founded upon the proceedings for the settlement of insolvent estates, in which the executor or administrator is regarded, in the first instance, as the trustee and representative of the creditors, and only secondarily the trustee for heirs or personal representatives. Though one who parts with his property for the purpose of defrauding creditors cannot recover it back, his personal representatives may sue for it for the benefit of his creditors, if his estate be insufficient to pay his debts. *Stewart* v. *Kearney, 6 Watts 453; Buehler* v. *Gloninger, 2 Id. 226; Bouslough* v. *Bouslough, 68 Pa. St. 495, 499; Everett* v. *Read,*

*3 N. H. 55; Abbott* v. *Tenney, 18 Id. 109; Cross* v. *Brown, 51 Id. 486; Fletcher* v. *Holmes, 40 Me. 364; McLean* v. *Weeks, 61 Id. 277, 65 Id. 411;* see, also, *Andruss* v. *Doolittle, 11 Conn. 283; Babcock* v. *Booth, 2 Hill 181, 186; Flagler* v. *Blunt, 5 Stew. Eq. 518;* and cases cited in Mr. Perkins's note to *3 Wms. on Exrs. 1782 [1679]*.

In a court of law, in ordinary cases, by proof at the trial or by the production of a decree of the orphans court, and always in a court of equity, the condition of the estate may be ascertained, and, if need be, a classification arrived at of the creditors who are and who are not entitled to the benefit of the statute; and on the settlement of the estate, the assets may be so marshaled and administered, by withholding from heirs, legatees and next of kin all advantages arising from the avoidance of the acts of the decedent, as to give effect to the policy of the statute, which denies to such representatives the power to avail themselves of its provisions for setting aside the fraudulent grants and conveyances of the deceased. The cases on this head in the courts of our sister states are not in harmony; but I think, on principle and good policy, the executor or administrator may be considered as the representative of creditors for the purpose of bringing suits to recover property fraudulently conveyed away by the deceased, when such property appears to be required for the payment of his debts, and that such property, when recovered, will be treated as assets, in the hands of the executor or administrator, only for the purpose of paying debts. Where the property so illegally disposed of consists of lands on which debts become liens by statute, and which may be subjected to the payment of debts by a creditor filing a bill in behalf of himself and other creditors (*Haston* v. *Castner, 4 Stew. Eq. 697*), the executor or administrator, before he can put himself in position to give him a standing for the purpose of reaching such property, must obtain an order of the proper court for the sale of lands for the payment of debts. *Kingsbury* v. *Wild, 3 N. H. 30; Drinkwater* v. *Drinkwater, 4 Mass. 354.*

Cases more directly in point with the case in hand are those decided under the insolvent acts of *1 Geo. IV, c. 119,* and *7*

Pillsbury v. Kingon.

*Geo. IV, c. 57.* In *Butcher* v. *Harrison, 4 B. & Ad. 129,* the assignees of an insolvent under the insolvent act were held to be parties grieved, within the meaning of the statute *13 Eliz. c. 5,* so as to enable them to recover of the insolvent and others, parties to a fraudulent conveyance, the penalty given by the statute; and in *Doe, Grimsby* v. *Ball, 11 M. & W. 531,* the assignee of an insolvent was adjudged capable of recovering lands which the insolvent had previously conveyed away in fraud of creditors. In both these cases, the assignee was regarded, for the purposes of the suits, as the representative of the creditors of the insolvents. In the case last cited, Parke, B., said:

"I think that the assignee of an insolvent debtor represents the creditors for all purposes, and if any fraud exists in a transaction to which the insolvent was a party, that the assignee may take advantage of it. A deed which is void as against creditors is void also as against those who represent creditors."

Alderson, B., also declared that "if a deed be void as against creditors, the assignee who represents creditors may avoid it." In *Norcutt* v. *Dodd, 1 Cr. & Ph. 100,* a bill by an assignee in insolvency was sustained, the object of which was to set aside a voluntary alienation of property of the debtor, who, at the time of such alienation, was insolvent. In the later case of *Holmes* v. *Penney, 3 K. & J. 90,* the bill was filed by the plaintiff as a creditor and also as an assignee in insolvency, to impeach a settlement by a debtor in fraud of creditors; and in considering the question of parties, Vice-Chancellor Wood said:

"I have no doubt of the right of the assignee in insolvency to sue in this case. In *Doe, Grimsby* v. *Ball,* Baron Parke and the present lord chancellor decided that an assignee in insolvency might properly represent all the creditors in proceedings to set aside an instrument which any of the creditors might have instituted."

In the two cases first cited, the assignment was made under the act of *1 Geo. IV, c. 119;* in the other two, under the act of *7 Geo. IV, c. 57.* In none of the cases was the decision placed on any language in the statute specially empowering the assignee to avoid the fraudulent conveyances of the assignor. In fact,

neither of those statutes contained any express provision for setting aside conveyances of the assignor in fraud of creditors, and that fact was unsuccessfully pressed upon the attention of the court by the counsel, who argued against the authority of the assignee to exercise that power. The capacity of the assignee to appear in court for that purpose was in express words, or inferentially adjudged on the ground that the assignee of an insolvent was the representative of creditors, and, as such, was entitled to take, for their benefit, the same advantage of the statute of Elizabeth as the creditors might have taken. This view is conspicuously apparent in the remarks of Baron Parke during the argument, and in his judgment in *Doe, Grimsby* v. *Bell.*

A trustee or assignee in insolvency has been considered as the representative of the creditors of the debtor, and, as such, entitled to avoid, in the interests of creditors, his grants and conveyances made in fraud of creditors. *Swift* v. *Thompson, 9 Conn. 63 ; Palmer* v. *Thayer, 28 Conn. 237 ; Shipman* v. *Ætna Ins. Co., 29 Id. 245 ; Moncure* v. *Harrison, 15 Pa. St. 385.*

In *Bayard* v. *Hoffman, 4 Johns. Ch. 450,* Chancellor Kent decided that an assignment of all the debtor's estate, real and personal, in trust for all his creditors, included stock which the debtor had before that voluntarily assigned, to the injury of his creditors, and that the assignee might file a bill to set aside the fraudulent transfer for the benefit of the creditors. That case has been considered as overruled by the courts of New York, in *Storm* v. *Davenport, 1 Sandf. Ch. 135,* and *Brownell* v. *Curtis, 10 Paige 210 ;* but its weight as the opinion of an eminent equity judge is not impaired by the overruling cases. *Storm* v. *Davenport* was rested on *Mackie* v. *Cairns, 5 Cow. 547*—a case which bore upon the question very remotely, if at all.; and in *Brownell* v. *Curtis,* Chancellor Walworth founds his opinion chiefly on *Osborne* v. *Moss, 7 Johns. 161,* which was an action at law against an administrator, and in its circumstances identical with *Hawes* v. *Leader,* already commented on.

An assignment under the act of the legislature of this state differs in most important particulars from an assignment made by a debtor at common law for the benefit of his creditors. Its

title indicates the legislative purpose to establish a system for securing an equal and just division of the estates of debtors among their creditors, and that purpose is clearly evinced by the provisions of the act. At common law, a debtor might assign the whole or a portion of his property for the benefit of all or a part of his creditors. By our statute, an assignment under the act transfers all the property of the assignor, whether it be described in the inventory or not. In form, the deed of assignment is in the most general terms in its description of the property assigned, and the property of the assignor passes by the assignment, though it be not included in the inventory annexed to it, if it be comprehended within the general terms of the assignment; and to be valid under the act, the assignment must be for the equal benefit of all the creditors of the assignor, and all preferences of one creditor over another are forbidden. At common law, an assignment by a debtor to his trustee to pay his debts might be rescinded by the mutual consent of the debtor and the trustee, where the creditors had not directed the assignment or assented to it or changed their situation in consequence of it. *Bill* v. *Cureton, 2 Myl. & K. 503 ; Garrard* v. *Lauderdale, 3 Sim. 1 ; Colyear* v. *Mulgrave, 2 Keen 94, note 1.* A deed of assignment under the statute, executed, delivered and accepted by the assignee, creates, *ipso facto,* a trust for the benefit of creditors, not to be surrendered or destroyed except by their consent, and a court of equity will execute it by appointing new trustees, if necessary. *Scull* v. *Reeves, 2 Gr. Ch. 84, 131 ; Alpaugh* v. *Roberson, 12 C. E. Gr. 96.* Under such an assignment, the trustee, at common law, was compelled to use the assignor's name in suits to recover the property, or upon the choses in action assigned. By the statute, the assignee may bring suit in his own name. At common law the indebtedness of the assignor was discharged only to the extent of actual payment out of the proceeds of the property assigned, unless otherwise expressly stipulated. By the statute, the assignor obtains a full release and discharge as to all creditors who come in under the assignment. The entire proceedings, under a statutory assignment, are regulated by the statute. The act requires the deed

of assignment to be recorded, and prescribes minutely the duties of the assignee. He is to exhibit to the surrogate of the proper county a true inventory and valuation of the estate assigned; give security for the faithful performance of the trust; give public notice of the assignment; make report of the claims of creditors; make sale and conveyance of property; present his account to be audited and approved by the court; and the court may, by citation and attachment, compel the assignee to proceed with the execution of his duties until a final settlement and distribution shall be made. Creditors who come in under the assignment and exhibit their demands for a dividend, are barred of their debts unless they can prove fraud on the fact of the debtor with respect to the assignment or in concealing his estate.

A comparison of the statute with the English insolvent acts will disclose the similarity of these several acts in all respects material to this investigation. Under each system the assignee derives his title under an assignment which is the voluntary act of the debtor. In the one instance, he is induced to make the assignment by the expectation of relief from imprisonment; in the other, by the hope of obtaining a full discharge from his debts. The legal effect of the language of the assignment is the same in both instances, except that the position of the debtor, in the one case, raises a presumption that he is at that time unable to pay his debts in full, and that part must be made the subject of proof *aliunde* in the other, there is nothing in the situation of the assignor, or in the form of the assignment, that would make the assignee the representative of creditors in one instance and not in the other. In *Moore* v. *Bonnell, 2 Vr. 90, 95,* the chief-justice said:

"It is difficult to perceive how an assignment, voluntarily made by a debtor for the benefit of his creditor, differs in substance from one executed under the compulsion of an insolvent or bankrupt law. * * * There is to my mind scarcely a shade of difference between the coercion of circumstances impelling a failing debtor to wind up his affairs, and that liquidation brought about by a creditor taking the initiative and proceeding against him."

Regarding the substantial nature of the transaction, the doctrine

Pillsbury *v.* Kingon.

of the English courts, with respect to the representative character of the assignee of an insolvent, may very properly be applied in favor of an assignee under the assignment act, and the latter be regarded as representing creditors so far as to enable him to take proceedings in their behalf, to set aside conveyances in fraud of creditors, where such property is needed for the payment of debts.

Much of the argument against the power of the assignee to prosecute suits in that behalf for that purpose, was based on the thirteenth and twenty-first sections of the act. I am not disposed to give as much effect to these sections as was given to them in the court below. The thirteenth section gives the assignee the same power to dispose of the estate, real and personal, assigned, as the debtor had at the time of the assignment, with power to settle and compound with any person concerning the same, to redeem mortgages and conditional contracts, and generally to do whatsoever the debtor might lawfully do in the premises. It further authorizes the assignee to sue for and recover in his own name everything belonging or appertaining to the said estate, real and personal, of the said debtor—language which, in view of the purposes of the act, may legitimately be construed to embrace all property which may be made available for the payment of debts. Considering that the assignment creates a trust for the benefit of all the creditors of the assignor, and that the legislative purpose was to secure an equal and just division of the estate of the debtor among his creditors, a construction less comprehensive will defeat the legislative purpose. In virtue of the trust so created the assignee becomes the representative of and actor for creditors, and his powers should be so construed as to enable him to carry into full effect the purpose which the statute designed. In the English insolvent acts, under which assignees are allowed to avoid the fraudulent grants and conveyances of the debtor, the power of the assignee to sue in his own name is granted " for the recovery, obtaining and enforcing any estate, effects or rights of such prisoner "—language, in legal effect, identical with that contained in the thirteenth section of our assignment act. In *Garretson* v. *Brown, 2 Dutch. 425,* Justice Potts construed this section as enabling the assignee to sue for property fraudulently

conveyed away by the debtor, and to recover it for the use of the creditors who should present their claims.

The twenty-first section creates a bar of subsequent suits as against creditors who have come in under the assignment, liable to be removed only by proof of fraud in the debtor "with respect to the said assignment, or in concealing his estate, real or personal, whether in possession, held in trust, or otherwise." This language manifestly has reference to the conduct of the debtor in connection with his assignment, and has no relevancy to prior conveyances in fraud of creditors, unless such property might be made available to creditors under the assignment; for it is not to be supposed that the legislature would visit on the debtor the penalty of a forfeiture of his discharge for not disclosing to his assignee property which the assignee had no capacity to take under the assignment. The paragraph in this section which saves the rights of creditors who do not choose to exhibit their claims, as to the property, real or personal, not assigned, carries with it an implication that there might be property which would not pass under the assignment; but I do not think that this expression should be allowed to overcome the unmistakable evidence on the face of the statute, that the assignment should embrace all the property of the debtor, and that creditors should be placed on the footing of perfect equality in the division of the debtor's property, or that it was intended to give creditors who stayed out an advantage over those who came in under the assignment.

Nor will any embarrassment be experienced in the fact that the property which has fraudulently been conveyed away may be in excess of what is required for the payment of debts. As is indicated in the opinion of this court in *Miller* v. *Mackenzie, 2 Stew. Eq. 291*, such fraudulent conveyances will be set aside no further than is necessary for the satisfaction of the demands of creditors, and the surplus, if there be any, will not be restored to the fraudulent debtor, but will be returned to the grantee to whom the fraudulent conveyance was made.

In *Garretson* v. *Brown*, Justice Potts, in delivering the opinion of the court, held that the assignee might sue for and

recover for the use of creditors, property which the debtor had fraudulently conveyed away. These views were not expressed upon the precise point in issue in the case. But the case turned entirely on the effect of the prior fraudulent conveyances of the debtor upon the validity of the assignment, and it is highly probable that the powers of assignees over such fraudulent conveyances entered into the discussions of the able counsel who appeared in the case, and received a careful consideration by the court. The decision of the supreme court was affirmed in this court; but the opinion here, if any was delivered, is not reported. *3 Dutch. 644.* In *Van Keuren* v. *McLaughlin, 6 C. E. Gr. 163,* Chancellor Zabriskie adopted a different view, and without referring to *Garretson* v. *Brown,* held that the assignee could not maintain a suit to avoid a fraudulent conveyance of the assignor; that a deed, though void as against creditors, was valid as against the assignee. We think that the views of Mr. Justice Potts with respect to the rights of an assignee under the act were correct, and that *Van Keuren* v. *McLaughlin* should be overruled.

*Decree unanimously reversed.*